UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DARRYL WILLIAMS,

                               Plaintiff,

                                                    9:17-CV-1332
              v.                                    (GTS/DJS)

CHRISTOPHER MILLER, *et al.*,

                               Defendants.

APPEARANCES:                           OF COUNSEL:

DARRYL WILLIAMS
Plaintiff, *Pro Se*
14-A-2849
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

HON. LETITIA JAMES                     WILLIAM A. SCOTT, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Darryl Williams brings this civil rights action, pursuant to 42

U.S.C. § 1983, alleging that Defendants violated his constitutional rights while he was in

the custody of the Department of Corrections and Community Supervision ("DOCCS")

at Great Meadow Correctional Facility ("Great Meadow").  *See* Dkt. No. 1, Compl.  On

initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the District

Court dismissed Plaintiff's Eighth Amendment and New York State Law claims, leaving Plaintiff's Fourteenth Amendment privacy claims against Defendants Thompson, Watkins, Nesmith, Jane Doe, Miller, and Harris. Dkt. No. 8. Defendants have now filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a), seeking to dismiss the Complaint in its entirety. Dkt. No. 20, Defs.' Mot. Summ. J. Plaintiff's opposition was due by February 19, 2019; the Court advised Plaintiff of the Motion and his response deadline, and of the consequences of failing to file an opposition. Dkt. No. 21. Additionally, upon his initial failure to respond to the Motion, in light of his *pro se* status, the Court granted him an additional extension of time to respond until May 3, 2019. *See* Dkt. No. 22. Plaintiff has never submitted an opposition or any request for additional time to respond to the Motion.

For the reasons that follow, the Court recommends Defendants' Motion for Summary Judgment be **GRANTED**.

## I. BACKGROUND[1]

Plaintiff was in DOCCS custody at Great Meadow from July 2014 to December 2016. Dkt. No. 20-11, Plaintiff's Deposition ("Pl.'s Dep.") at p. 13.

On May 31, 2016, Plaintiff had a "medical call-out" to see Defendant Thompson in Great Meadow's infirmary for a regular appointment. Pl.'s Dep. at pp. 30-31 & 34-35.

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* As noted, Plaintiff has not filed a response to the Motion. In deference to Plaintiff's *pro se* status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

Plaintiff alleges that Defendant Watkins took his vitals and then placed him inside an examination room where the door "remained open with a trash can holding [the] door wide open to prevent [the] door from closing." Compl. at ¶ 7; *see also* Pl.'s Dep. at pp. 29-32. Defendant Thompson then entered the examination room and began to discuss Plaintiff's lab reports and HIV status while the examination room door was left open. Compl. at ¶¶ 7-8; Pl.'s Dep at pp. 29-34. Plaintiff alleges that Nurse Watkins placed an inmate in the examination room adjacent to his, and could hear his confidential medical information as well as his identity; Plaintiff alleges that as a result of this "unwarranted disclosure," Plaintiff's medical information was disseminated to the prison population, and he was placed in harm's way. Compl. at ¶¶ 8-9; Pl.'s Dep. at pp. 33-38 & 54-55.

Plaintiff saw Defendant Thompson on another medical call-out on July 18, 2016. *See* Compl. at ¶ 10; Pl's Dep. at 68. Plaintiff alleges that during this examination Defendant Thompson apologized for "the unwarranted disclosure" from the previous visit but continued to "allow the exam room door to remain open while he discussed the plaintiff's [m]edical information carelessly again." Compl. at ¶ 10; *see also* Pl.'s Dep. at p. 68. Plaintiff testified that the only time Defendant Thompson disclosed his information was May 31st. Pl.'s Dep. at p. 69.

On July 21, 2016, Plaintiff had an appointment with Defendant Nesmith. Compl. at ¶ 17; Pl.'s Dep. at p. 74. Plaintiff alleges that during this appointment Defendant Nesmith discussed Plaintiff's current prescriptions. Compl. at ¶ 18; Pl.'s Dep. at pp. 74-75. Plaintiff alleges that Defendant Nesmith then left the examination room and upon return, he stood in the open doorway and asked Plaintiff, "What Prescription You Take

Case 9:17-cv-01332-GTS-DJS    Document 23    Filed 08/28/19    Page 4 of 13

Again, HIV and What Else?" Compl. at ¶ 19; Pl.'s Dep. at pp. 74-75. By Defendant Nesmith asking this question with the door to the examination room still open, knowing other inmates and corrections officers were no more than five feet away, Plaintiff contends that he revealed Plaintiff's "identity and medical condition to correction Officers and inmates in clinic area" and placed him in danger. Compl. at ¶ 19; *see also* Pl.'s Dep. at pp. 76-78. In addition, while Plaintiff was waiting in the clinic area hallway after his appointment, Defendant Jane Doe stood in the nurse's station doorway and asked Plaintiff, "What Kind of Prescription You Take?" Compl. at ¶ 24; Pl.'s Dep. at pp. 81-83. Plaintiff alleges that, because this occurred right after Defendant Nesmith had mentioned Plaintiff's HIV prescription, Jane Doe's statement reinforced Plaintiff's HIV status. *Id.*

Plaintiff attended another medical call-out with Defendant Thompson on November 15, 2016. Compl. at ¶ 11; Pl.'s Dep. at p. 67. Plaintiff contends that during this examination, Defendant Thompson closed the door to the room, which procedure "should have been the main objective initially to protect the unwarranted disclosure of confidential medical information." Compl. at ¶ 11. Plaintiff alleges that as a result of the disclosure of his medical information during his visits with Defendants Watkins, Thompson, and Nesmith on May 31, 2016, July 18, 2016, and July 21, 2016, he was subjected to discrimination, embarrassment, stigmatization, intolerance, and ostracism that has caused major depression, anxiety, and suicidal thoughts. *Id.* at ¶¶ 13, 16, 22, & 28.

Plaintiff also alleges that Defendants Harris and Miller in their roles as Nurse Administrator and Superintendent at Great Meadow Facility respectively, "created or allowed an unconstitutional policy or custom that caused the plaintiff's non-consensual and unauthorized disclosure of confidential medical condition to be disseminated into prison population on two occasion[s] by non-medical staff and inmates." Compl. at ¶ 30; *see also* Pl.'s Dep. at pp. 85-87. Plaintiff alleges this policy created the potential for abuse by other inmates in the facility. Compl. at ¶ 30.

At all relevant times, Defendant Miller was the Superintendent of Great Meadow Facility, a maximum security prison. Dkt. No. 20-2, Miller Decl., ¶¶ 1 & 5. Facility policy requires that the doors to examination rooms are kept open while inmates are consulting with medical staff. *Id.* at ¶ 7. Leaving the examination room doors open allows security staff to respond to any incidents that might arise if an inmate were to become violent or security staff otherwise needed to intervene. *Id.* at ¶ 9. Medical staff are aware doors to the examination rooms are to remain open, and conduct their consultations to "minimize the possible release of any health information." *Id.* at ¶ 8. All security determinations, including whether doors to examination rooms must be kept open, are made by security staff; medical staff are not authorized to make security determinations. *Id.* at ¶ 6. Plaintiff alleges that this policy is unconstitutional, and that Defendant Miller failed to remedy it, and instead has adopted and supported it. Compl. at ¶¶ 35-40. Defendant Harris was the Nurse Administrator for Great Meadow at all times relevant to the Complaint. Dkt. No. 20-9, Harris Decl., ¶ 1. She did not develop the

policy regarding examination room doors, and as a member of the medical staff, she is not authorized to amend or deviate from the policy. *Id.* at ¶¶ 5-7.

## II. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

- 6 -

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Analysis**

*1. Plaintiff's Fourteenth Amendment Claims*

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to privacy by discussing his HIV status, among other conditions, in a manner in which other inmates or corrections officers could hear the discussions. Defendants contend in their Motion that Plaintiff's claims fail because it is uncontroverted that none of the Defendants

acted with a sufficiently culpable mental state.  Dkt. No. 20-12, Defs.' Mem. of Law, pp. 4-5.

"The Fourteenth Amendment's Due Process Clause protects an inmate from the unwanted disclosure of information pertaining to an inmate's health." *Davidson v. Desai*, 817 F. Supp. 2d 166, 191 (W.D.N.Y. 2011) (citing *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994)).  This right is a "limited" and "narrow" one.  *Gibson v. Rosati*, No. 2016 WL 11478234, at *4 (N.D.N.Y. May 19, 2016), *report and recommendation adopted*, 2016 WL 5390344 (N.D.N.Y. Sept. 27, 2016).

There is no allegation in this case that any Defendant who directly discussed Plaintiff's medical condition with him intentionally disclosed that information to others. In fact, Plaintiff testified specifically that "I never said that any of them intended to - - you know, disclose the information. . . . What I said is that they disclosed it, unintentionally they disclosed the information, but I don't - - I don't believe that they did it on purpose." Pl.'s Dep. at pp. 94-95.  He also stated at separate points in his deposition that he did not believe that Defendants Thompson or Watkins intended to disclose his medical information, and that he had told Defendant Thompson that he understood any disclosure he had made was "inadvertent."  Pl.'s Dep. at pp. 40, 57, & 68.

Disclosures of this nature, particularly inadvertent ones, do not violate a prisoner's right to privacy. *Levola v. Fischer*, 2010 WL 11602538, at *18 (N.D.N.Y. Sept. 29, 2010) ( "an instance of inadvertent disclosure of plaintiff's medical records . . . are not sufficient to state a claim for the violation of plaintiff's privacy rights which is cognizable under § 1983."); *Resto v. Weissmane*, 2008 WL 5191733, at *4 & n.3 (N.D.N.Y. Dec. 10, 2008)

("To the extent that Plaintiff's breach-of-privacy claim arose out of an incident when a medical staff member *negligently* spoke so loudly during a sick call visit to Plaintiff that one or more nearby correctional officers (supervising the visit in order to maintain prison security) overheard Plaintiff's medical condition, such negligence (whether it is the subject of a claim asserted under the Fourteenth Amendment or the Fourth Amendment) is not actionable under 42 U.S.C. § 1983.").

Defendants Nesmith and Thompson have submitted declarations stating that they never intentionally disclosed Plaintiff's health information to another inmate; indeed, medical staff endeavors to keep consultations as private as possible. Nesmith Decl. at ¶¶ 7-8; Thompson Decl. at ¶¶ 8-9. Defendant Watkins is alleged to have done nothing more than place another inmate in proximity to Plaintiff. *See* Compl. at ¶¶ 8-9. In order to defeat summary judgment, the plaintiff must "carry his burden of adducing facts that a court might deem sufficient to support a finding that [defendants] acted with more than mere negligence." *Grune v. Rodriguez*, 176 F.3d 27, 33 (2d Cir. 1999). Here, given Defendant's evidence and Plaintiff's concession that any disclosure by Defendants was not intentional, Plaintiff has not carried his burden and summary judgment is appropriate on this claim. As such, the Court recommends that Plaintiff's claims against Defendants Thompson, Nesmith, and Watkins be dismissed.

### 2. Plaintiff's Supervisory Claims

Plaintiff alleges that Defendant Harris created or allowed the open door policy, and that Defendant Miller is responsible for failing to remedy the unconstitutional practice of an open door exam room policy or custom. Compl. at ¶¶ 30 & 39. Defendants

contend that these claims should be dismissed because, without an underlying constitutional violation, a supervisory claim cannot succeed. Defs.' Mem. of Law at pp. 5-6. The Court agrees that because Plaintiff's Fourteenth Amendment claims are without merit, his supervisory liability claims based upon such violations cannot succeed. *Thompson v. Carlsen*, 2010 WL 843872, at *7 (N.D.N.Y. Mar. 10, 2010) (citing *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999)). The Court therefore recommends that Plaintiff's claims against Defendants Miller and Harris be dismissed.

Defendants also assert that the policy itself is not unconstitutional in any event, because it is reasonably related to penological interests. Defs.' Mem. of Law at pp. 6-7. In his Complaint, Plaintiff asserts that "there is no penological interest or rational[e] to have an open door policy or custom in exam room in the clinic area when all examination room doors have transparent glass windows for security purpose." Compl. at ¶ 32.

"[P]risoners retain a right to privacy for medical information unless (1) that disclosure was reasonably related to legitimate penological interests or (2) the information . . . was not the type of sensitive medical information contemplated by the courts for constitutional protection." *Simon v. N.Y.C. Dep't of Corr.*, 2013 WL 4792840, at *2 (S.D.N.Y. Aug. 29, 2013) (citing *Powell v. Schriver*, 175 F.3d 107, 111-13 (2d Cir. 1999)). The examination room doors at Great Meadow are kept open so that "security staff are better able to respond if an inmate becomes violate, threatens medical staff or if there is any other need for security to intervene." Miller Decl. at ¶ 9. Requiring that doors be left open during medical exams in a maximum security prison "serves the legitimate penological interest of protecting civilian staff from the threat of violence."

*Michael v. Perez*, 2017 WL 5991794, at \*2-3 (S.D.N.Y. Dec. 1, 2017); *see also Warren v. Corcoran*, 2011 WL 5599587, at \*7 (N.D.N.Y. Oct. 20, 2011) (finding that the presence of correctional officers at prisoner's medical appointment served the legitimate penological interest of protecting medical staff from potential threats).  In addition, the Superintendent affirmed that medical staff are to conduct consultations as to minimize the release of any information, and the medical staff affirmed that they keep consultations as private as possible.  Miller Decl. at ¶ 8; Nesmith Decl. at ¶ 7 ("[M]edical staff endeavors to keep consultations as private as possible"); Thompson Decl. at ¶ 7 ("I do my best in all circumstances to keep my discussions with inmates about their health, private").  Accordingly, the Court also recommends that summary judgment be granted on the ground that the open door policy is reasonably related to penological interests and does not violate Plaintiff's right to privacy.

### 3. Qualified Immunity

Defendants alternatively seek summary judgment on the ground that they are entitled to qualified immunity. Defs.' Mem. of Law at pp. 7-8. Qualified immunity provides a "shield[ ] ... from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)

(quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)).  In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341.  Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Even if the Court were to accept that a question of fact existed as to the underlying violation, the Court would find each of the Defendants entitled to qualified immunity. This is so because based on existing law, no reasonable official could have known that inadvertently disclosing Plaintiff's medical information was objectively unreasonable under the circumstances.  Likewise, no reasonable supervisory official could have known that a policy that is reasonably related to legitimate penological interests is unreasonable under the circumstances.

### 4.  Jane Doe

As to the still unidentified Jane Doe Defendant, Plaintiff has not named this Defendant in an Amended Complaint nor served this Defendant.  I recommend that this Defendant be **dismissed** for a number of reasons: (1) Plaintiff's failure to comply with a court order under Federal Rule of Civil Procedure 16(f);[2] (2) Plaintiff's failure to

---

[2] On initial review of the Complaint, the District Judge ordered that Plaintiff "must take reasonable steps to ascertain the identity of the defendant.  Upon learning the identity of the unnamed defendant, Plaintiff must amend his complaint to properly name him or her as a defendant.  If Plaintiff fails to ascertain the identity of the defendant so as to permit the timely service of process, all claims against that individual will be dismissed."  Dkt. No. 8 at p. 16 n. 9.  This case was filed in December of 2017; any amendment of pleadings and joinder of parties were due by August 18, 2018, and discovery was due by October 19, 2018.  Dkt. No. 14.

prosecute under Federal Rule of Civil Procedure 41(b) and Local Rule 41.2(a); and (3) Plaintiff's failure to serve within 90 days under Federal Rule of Civil Procedure 4(m). *See Jones v. Rock*, 2015 WL 791547, at *21 (N.D.N.Y. Feb. 24, 2015); *Cusamano v. Sobek*, 604 F. Supp.2d 416, 500-501 (N.D.N.Y. 2009).

### III. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 20) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: August 28, 2019
       Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).